Thank you. May it please the Court, I'm Michael Tanaka, Deputy Federal Public Defender, appearing on behalf of Appellant Huey Carter. Mr. Carter pleaded guilty to a very serious offense for which he was sentenced to over 18 years. At the time of his plea, he was proceeding without counsel and it was revealed that he was being treated for a mental illness and taking psychiatric medications. Because the District Court did not explore that topic in order to ensure that the plea was knowing and voluntary, the record does not show that that guilty plea was knowing and voluntary and for that reason it must be vacated. Counsel, is this just a per se violation that Judge Morrow just failed to ask the questions and so it has to go back without any showing of prejudice on your part? You don't have to make any showing that Sarah Quill and Will Buterin might have affected his cognitive processes? There are a couple of issues in that question, Your Honor. One, if the plea is in fact not knowing and not voluntary, then yes, the case law is very clear. Well, how do we know if it's not voluntary and not knowing? Don't you have to come forward? Do you have to come forward with some showing here that his condition was such that we have reason to suspect that it was not voluntary or that a combination of these medications is very likely to impair somebody's judgment? Yes, Rule 11 implements the due process requirement that before a court takes any waiver of counsel of a guilty plea, it must ensure that the record must show that the plea is knowing and voluntary, that comes straight from Boykin. In federal court, Rule 11 implements that policy. Rule 11 is the procedure by which federal courts ensure that the plea is knowing and voluntary. And ordinarily, if the Rule 11 colloquy is done correctly and sufficiently, then we'll have a record that the plea is knowing and voluntary. So what's the evidence in the record that Mr. Carter's plea was not knowing and voluntary? He says he's being treated for depression. Seroquel and Welbuterin are common medications that are used to treat bipolar disorder and depression. There are many people, there may be people in the courtroom today who are on these and fully functioning. So what's the evidence in the record for your client? Well, Your Honor, the evidence is he said he was being treated for mental illness. He didn't specify mental illness. And as court notes, Seroquel is an anti-psychotic medication, which my quick perusal of Wikipedia, that well-known source, said that it's primarily used for schizophrenia and bipolar disorder. I didn't see in your briefing that you argued that, or that Mr. Carter argued that his plea was involuntary or unknowing. I didn't actually see him making that claim. Is he making the claim that his plea was involuntary, or is he just saying that the Rule 11 colloquy was insufficient? The record doesn't ensure, there's not a sufficient record for this court or anyone to know whether the plea was knowing and voluntary. So standing here today, you as his attorney are not telling us that his plea was involuntary and unknowing. You're just saying the record, the Rule 11 colloquy was incomplete. Is that correct? That's correct. And that colloquy, the record, the requirement that the record show that it's knowing and voluntary is a constitutional requirement straight from Lincoln versus Alabama. But if it's just a Rule 11 violation, without a showing of lack of voluntariness or lack of knowingness, Rule 11 violations are subject to harmless air analysis. Are they not? No, Your Honor. Ordinarily, as under Dominguez Benitez, the showing would have to be that there is a harmless air showing would result whether there's a showing that he would not have entered the plea had the Rule 11 colloquy been correct. But here, it's a little different clause because it's not just, well, the court didn't ask this question, the court didn't ask that question. The whole inquiry here, the whole issue here is whether the plea was knowing and voluntary. And Mr. Carter had a prior competence hearing? No. Nothing to judge him competent? How was he allowed to represent himself? There was a FREDA hearing at which the judge went through. So the judge had had some prior contact with him? That's correct, Your Honor. And she had determined that after giving him the appropriate warnings that he was competent to represent himself? Yes. Okay. So she's had prior experience with this defendant. She's seen him before. She's talked with him before? That's correct. Okay. Now, do we get to cut the judge any slack here off of the fact that she has had dealings with him before and that in this colloquy that he has some discussion with her, he greets her, she comes into the courtroom, he answers her questions, yes, ma'am. I mean, we have no way of judging off this transcript whether he's drooling or whether he's standing and very alert and appears to be completely attentive and engaged in this colloquy. Yeah, but the difference between the colloquy at which he weighed counsel and the colloquy at which he pled guilty is that at the time he weighed counsel, she asked the same question, are you taking any medication? He said yes, I'm taking medication for high blood pressure. Four months later, he's taking, he's being treated for a mental illness, taking some very serious antipsychotic medications. That signals to the court that, hey, something has changed, something is different, this is something I need to explore just to ensure that this man is fully functioning, he understands what's going on here. Before I take this plea to something that's going to send me to prison for over 15 years. It's not very much to ask that when someone says, look, judge, I'm being treated for a mental illness and I'm taking pills and Seroquel and who knows what else, to say, why are you taking those? You weren't taking those last time I was here? What prompted that? How did they make you feel? You don't have an affidavit, you don't have a statement, a letter, anything from your client that says while I was taking Seroquel and Welbuterin, my judgment was impaired in the following ways. I spaced things and I don't believe that I was, that I would have pled guilty if I hadn't been on these medications. Do you have anything in the record on there? No, but of course this record is the record on appeal and he didn't move to withdraw his plea, so we're raising it for the first time on appeal. The other point is that of course he was representing himself. If he was really out of it, then he might not know to put this in. Perhaps the best recourse is what the other circuits have done in this case is to just simply remand to have a hearing on whether those, what the effect of those, so we can have that evidence. So we know whether that Seroquel affected impaired his thinking at the time. There's certainly nothing on this record that indicates that he was fully functioning. Are you here on plain error review? Yes. Did he have standby counsel? No, he did not. Do you have any recourse in habeas? Can he bring a 2255 here and challenge this on habeas? I guess it's possible that he could bring a 2255 and claim that the plea was involuntary because he was on the influence of psychiatric medications that impaired his judgment and led him not to understand what was occurring at the time. If he did it on 2255, then he would have to come forward with some evidence rather than just saying, Judge Morrow didn't ask me a follow-up question. That's true. On the other hand, the law is pretty clear that it's Judge Morrow's duty to ask those follow-up questions to ensure that there's a record that the plea is not involuntary. It shouldn't be incumbent on Mr. Carter to come back now on a 2255 and say, oh, here's the evidence, Judge. Well, she did ask him whether being on those pills was making it hard to understand, and Mr. Carter said no. So your argument is that she needed to do more than that as a matter of law under Rule 11. Am I understanding that? That's the argument, Your Honor. Mr. Tanaka, you said that the district lawyer has a duty to ensure the record. So were the follow-up questions for our benefit? I mean, if Judge Morrow was completely satisfied, she can see the guy. She's had dealings with him before. He's answering her questions clearly and distinctly, just hypothesized. But she has a duty then to create the record, and the record is to be created for us. This is all for our benefit? Well, the record's for her as well. But if she's completely satisfied? But she has an inadequate basis to be completely satisfied. How many more questions did she have to ask him? What did she have to say? Just about two more would have done it. Why are you taking these pills? What mental illness do you have? And how do they make you feel? And what would that have done? I mean, he said, therefore, bipolar illness, perhaps. He said that, and he said, I feel fine. I mean, he already said no. They didn't make it hard to understand. So wouldn't you still be up here arguing that she didn't do enough? I might be, but it would certainly be weaker. I might want to know, okay, what symptoms of your bipolar illness? Even at that point. I mean, he's not a doctor. He's not. And you just wonder whether, you know, that in this case, whether she had to create a record that somehow involved mental treatment, that she had to go over and have him evaluated before she could accept a guilty plea from him. I'm not going that. I don't think that's required, John. I think that she just had to go a little bit further. You just can't say, oh, I'm taking pills, and I have mental illness. You seem fine. Let's move on. Let's spend a couple minutes and explore that a little bit. If that creates further doubt, then, yeah, then maybe she has to do an evaluation. If he's lucid, if he can answer some open-ended questions other than yes, no, yes, no, then, yeah, then we go on. We have a good record, and there's no question that the plea was knowing and voluntary. But that didn't happen here. It just said, oh, it's like I'm taking aspirin. No, he wasn't taking aspirin. He was taking Cerebil. He was being treated for some mental illness, maybe a bipolar disorder, maybe schizophrenia. We don't know because the record doesn't tell us because the judge did not follow up on that red flag. And for that reason, the record can ensure that this plea is knowing and voluntary. And we can't just go on and say, Mr. Carter, do your 15 years in prison. And so he didn't have counsel. And the due process clause requires that the record show that the plea is knowing and voluntary. It doesn't in this case. The case should be remanded. Okay. Mr. Tanaka, we've been fairly aggressive in our questions. We've taken you well over your time. I will allow you a minute for rebuttal. Thank you. May it please the Court. I'm Max Scheiner, appearing for the United States. I'd like to just start off by trying to give a brief framework to address the questions that you posed at the beginning of counsel's argument. So a guilty plea simply requires competency and voluntariness, competency meaning that the defendant has a rational understanding of the proceedings and voluntariness meaning that he understands the significance and consequences of his guilty plea. So Rule 11 assures that the record is – that there's sufficient record to reflect that those requirements have been met. There's a basis for that determination. So the question before the Court is whether the colloquy is sufficient in the context of everything in the record. To conclude, the defendant understood the consequences of his plea here. This Court has ruled in Kramer that the determination should take into account the record of the hearing and the totality of the hearing. And there's never been any hard and fast rule that any particular question should be asked. The case is ruled upon – the case is relied upon by the defendant in his opening brief when his claims seem to be that particular questions about dosage and effects should have been asked have been limited. There's no – in fact, the First Circuit itself limited par abonnes to say there's no requirement that particular dosage levels be asked about. The question is whether if these drugs have any capacity to impair the defendant's competence, whether they in fact did so on that occasion. Now in this Court, as the Court noted, Judge Murrell personally addressed the defendant, and it was that questioning that revealed his medication he was taking. It's important to look exactly at what the Court asked. When she asked what medication you're taking, the defendant himself volunteered it's Seroquel and other depression pills or some depression pills. So I think the inference from the record is that the defendant understood he was being treated for depression, a common condition that's often – that's commonly treated and for which drugs are commonly prescribed. But the Court did not stop there. The Court asked three more follow-up questions before beginning its standard Rule 11 colloquy. It asked, are those affecting you in any way so it's hard for you to understand what I'm saying and what the lawyer referring to, the prosecutor, is saying. The defendant said, no, ma'am. The Court asked, do you believe – do you understand the purpose of the hearing today, which is a question designed to get to exactly the issue at hand, whether he had an understanding of the proceedings. He replied, yes, ma'am. And the Court asked an open-ended question at that point, what are you here to do? And he said, I'm pleading guilty. So the Court did directly address the defendant, but still the defendant argues that the colloquy was not sufficient because the question about the effect of the medication was inadequate. This ignores the totality of the Rule 11 colloquy. The defendant himself, first of all, assured the district courts that the medication was not having an adverse effect on him, and I would submit that some – for which these medications are prescribed is that sometimes these are self-disguising diseases. If somebody's – let me give you an easy example. If somebody's suffering from Alzheimer's, you don't ask them if they're aware of what's going on. The answer, yes, you can't be – have any degree of confidence that the answer is valid. That's possible, and that's why the questioning should be directed at the defendant's state of mind and whether he is thinking clearly on that occasion. So the questioning was followed up with the Rule 11 colloquy, which consisted of – I counted approximately 50 questions designed to determine if this defendant understood the proceedings. The Court asked about his age of education, his understanding of his rights, the elements of the offense. Even more complicated questions like the effect of mandatory minimums, prior convictions on mandatory minimums, the effect of the guidelines, the possibility that the career offender guideline would apply. Were most of his responses, though, yes or no? I mean, he didn't – and there's some cases suggesting that that's not sufficient to show confidence. Well, the Court did begin by asking open-ended questions at the beginning of the hearing. When she got to the more technical aspects, she asked questions that called for yes or no answers, and all those answers were provided in such a way that you would expect the person who understood them to answer them. So the defendant is arguing that we can't have confidence in this plea colloquy. It's based, I would argue, on speculation that this medication was effective in some way. In other words, if the defendant didn't understand the consequences of his plea, he was somehow able to act in such a way that he appeared to behave exactly like someone who did understand all these consequences. So the defendant is proposing that the medication may have been something that caused this defendant to be so confused that his plea wasn't voluntary, but also permitted him to answer in such a way that totally belied any confusion. And to your point, Judge Biby, whether any deference is owed to the district court, I believe that it is appropriate to supply some deference to the district court because after all, as you said, there was a FREDA hearing, similar questions were asked in that hearing, so the court was at least acquainted with this defendant's baseline demeanor. At that point of the FREDA hearing, he was not, as he assured the court, under any depression medication, so the court understood, knew what his demeanor was like prior to him taking that medication. And the district court has the opportunity to view the defendant, see if there's any hesitancy in his answers, see if there's any confusion on his face. The record doesn't show any of those things. There's no policy proceedings. There's no indication that this defendant sought to clarify questions before answering. What we got were questions that indicated to the court, and I think to this court, that this defendant intended to plead guilty, understood that that was what he was doing, and answered the questions in a way that allowed him to do so. Did he go through, all the way through sentencing, Pro Se? He did, Your Honor. Maybe you shouldn't ask questions as they come to mind, but does the fact that Judge Morrill then also saw him in a sentencing proceeding have any effect upon this and would have seen a pre-sentence report that presumably discussed his mental health issues? In other words, does that in any way ratify what happened here? I don't think it can ratify them. If the claim is simply that Rule 11 was inadequate, then this court's cases say that you have to look at the record of the Rule 11 colloquy to determine whether it's adequate. I believe that, despite that, you can give some discretion to the district court, because the district court was able to personally observe the defendant, but if something had come up that it later cast doubt upon those proceedings, I don't think you can use that. I do think that based upon how Judge Morrill handled the proceedings, how she saw the defendant's Pro Se filings, granted some of them, appointed an investigator for him, for example, do provide you some assurance that if there had been a serious problem presented in the PSR as to his mental competence, that the court would have taken action at that point and not simply gone on to impose a sentence. But that's based on our experience with Judge Morrill. If you look at a case of ours like Christensen, there wasn't much of a record in Christensen. We seem to impose a pretty absolute duty on district courts to make this inquiry if there's any reason to suspect that there's mental illness. That's right, but all of the cases, at least one case cited by a defendant where there was inadequate inquiry, they all lack one thing, and that is the direct question to the defendant that goes to whether or not that medication is affecting his ability to understand the proceedings. That is present here, as well as the follow-up questions that the court asked, as well as the entirety of the plea colloquy that would assist this court in reviewing whether or not there's any reason to believe the defendant was incompetent. You can look at every single one of those cases. In other cases, there was an attempted suicide as well as depression. In other cases, the drugs taken were not common depression pills. They were cocaine and heroin the night before. Those were raised red flags. Now, I'm not saying that there's any absolute number of questions that need to be asked. I'm saying that under the totality of the circumstances, this court must make the evaluation. These facts, where the colloquy was smooth, the defendant personally assured the court of his competence, and the court had nothing in the record that would have alerted the court to a question about his competence that the defendant's claim fails. Okay. Thank you, Mr. Shiner. Thank you. Mr. Tanaka. I'd just like to emphasize the one difference between most of the cases that the government references and this case, and that is in all those cases, the defendants were proceeding with counsel who presumably has an independent duty to assure that the defendant is competent, has talked over the terms of the guilty plea, understands it. Here, the man is operating on his own without counsel. So in that circumstance, the court has a special duty to assure that the plea is knowing and voluntary, and where he says, I'm taking psychiatric medications for mental illness, and the court simply leaves it. Well, do you understand what's happening? He says, yes, I do. That is simply insufficient under the circumstances of this case. Thank you, Mr. Tanaka. We thank both counsel for the argument, United States v. Carter.
judges: Melloy, Bybee, Ikuta